IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RIGOBERTO RAMIREZ, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:03-CV-2625-D |
| VS. § | |
| § | |
| UNIVERSITY OF TEXAS § | |
| SOUTHWESTERN MEDICAL CENTER, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Rigoberto Ramirez ("Ramirez") sues defendant University of Texas Southwestern Medical Center of Dallas ("UT-Southwestern") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, alleging that it discriminated against him based on his Hispanic race by denying him promotions and other employment benefits, and that it retaliated against him by terminating his employment after he complained of retaliation and discrimination. UT-Southwestern moves for summary judgment. For the reasons that follow, the court grants the motion in part and denies it in part.

I

Ramirez began his employment with UT-Southwestern in 1995 as a maintenance worker,[1] and in 1997 he became the Building Utility Operator. In 2000 he filed internal complaints with the Office of Equal Opportunity and Minority Affairs, asserting that he had been denied several promotions based on his Hispanic race: once to Acting Physical Plaint Foreman III, and twice to

---

[1] The court recounts the evidence favorably to Ramirez as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

permanent Foreman. Ramirez alleges that UT-Southwestern twice told him that it had lost his applications for promotions, which required that he resubmit them, that he had more experience and seniority than the individuals whom UT-Southwestern promoted to Foreman, and that, after he reported allegations of race discrimination, UT-Southwestern did not investigate his complaints. He also avers that his supervisors retaliated against him for complaining of discrimination by suspending him without pay. Ramirez maintains that they based the suspension on his failure to show up for work, but that he had been approved for vacation time on the days in question. He also complains that he was forced to file an appeal to overturn the suspension. In 2001 Ramirez unsuccessfully sought another promotion to the Foreman position. A person who had less seniority, and whom Ramirez had trained, was given the job.

In 2002 he again applied for two openings for the job of Foreman. At the time, he was the most experienced and the senior applicant, and he believed he was next in line for promotion. His supervisor, Ulysses Johnson ("Johnson"), the Superintendent of Utilities, advised him that UT-Southwestern had decided to eliminate the Foreman positions.

Later in 2002 Ramirez requested in writing that he be included in UT-Southwestern's apprenticeship program and requested cross-training in the Controls Shop, but no one responded to the requests. He also requested a computer ID and password so that he could use the computer resources at UT-Southwestern, as did other employees and students, but he did not receive a response.

On October 9, 2002 Ramirez drafted a request on behalf of second- and third-shift maintenance workers that they be paid shift-pay differential, a form of compensation given to qualified employees for inconvenience experienced in working hours other than the regularly-

scheduled daytime shift. Ramirez and the five workers in question—who were either Hispanic or African-American—signed the letter, which was sent to John A. Roan ("Roan"), Executive Vice President for Business Affairs. After they did so, Johnson reprimanded them in writing for failing to follow the chain of command.

Ramirez responded to the reprimand by writing an October 31, 2002 letter to Kirby Vahle ("Vahle"), Vice President of Facilities Management, in which he demanded that Johnson's letter be removed from his personnel file. That same day, Johnson provided Ramirez a letter that recommended he be terminated for using inappropriate language earlier that month, being unavailable for work because Ramirez was sitting in his car two minutes before his shift ended, and failing to follow procedures when he told another employee that he could leave work early on October 22, 2002. Ramirez denied the allegations in his written response, but Johnson discharged him on November 1 based on the grounds set out in the letter.

Ramirez filed formal complaints of discrimination based on the denial of his requests for apprenticeship, cross-training, and use of computer resources, and he appealed his termination. Vahle upheld the decision to terminate Ramirez's employment. Ramirez then sought further review from Roan, who also upheld the discharge. Vahle also advised Ramirez that he could not grieve the issue of shift-pay differential because he was no longer an employee. Although UT-Southwestern has a policy of progressive discipline, Vahle testified in his deposition that it was not used because Ramirez had a history of disruptive conduct, including incidents in 1996, 1999, and 2000.

Vahle disagreed with Johnson's decision to reprimand the employees for requesting shift pay, and he testified that he did not recall any other employee's being reprimand or another employee's requesting that the reprimand be removed from his personnel file. Before Ramirez was

discharged, Vahle met with the employees who signed the letter, and he advised them they should not have been reprimanded.

Ramirez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), after which he initiated this lawsuit. UT-Southwestern moves for summary judgment. In his response to the motion, Ramirez asserts that he is entitled to recover under Title VII on three grounds: he was terminated in retaliation for complaining about retaliation against, and harassment of, minority employees; he was denied promotions to the position of Foreman because of his Hispanic race; and he was denied cross-training and computer access because of his race.

UT-Southwestern argues as a threshold matter that Ramirez cannot recover for any conduct that occurred before April 10, 2002, which is 300 days before he signed the charge of discrimination that he filed with the EEOC. It posits that it is entitled to summary judgment dismissing all of Ramirez's claims on the merits.

II

The court considers first whether Ramirez can recover based on conduct—principally, denials of promotions[2]—that occurred before April 10, 2002. UT-Southwestern contends he cannot, because Title VII imposes a 300-day limitation period, and that this bars him from recovering based on the denials of promotions to the job of Foreman in 1999 and 2001. Ramirez responds that his claims are not barred because he can establish a continuing violation.

"Although there is no definitive standard for what constitutes a continuing violation, the plaintiff seeking to invoke this doctrine must demonstrate more than a series of discrete discriminatory acts[.]" *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001).

---

[2]*See* D. Br. at 13 (citing two promotions as included in conduct that would be time-barred).

- 4 -

"'He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.'" *Id.* (quoting *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)). "[A] one-time employment event, including the failure to . . . promote, . . . is 'the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.'" *Id.* (quoting *Huckabay*, 142 F.3d at 240). "'[D]iscrete adverse actions, although racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment' and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine." *Id.* (quoting *Huckabay*, 142 F.3d at 240).

In summary fashion, Ramirez posits that these grounds of his claim are not time-barred because he can prove a continuing violation. *See* P. Br. at 19. He cites no evidence that would permit a reasonable finding that the promotion denials in 1999 and 2001 were anything but discrete acts. He essentially offers one conclusory paragraph in his summary judgment response in support of the *ipse dixit* assertion "that his failure to promote claim is a continuing violation under Title VII[.]" *See id.* The court concludes that Ramirez cannot recover under Title VII for denials of promotions or other conduct that took place before April 10, 2002, and it grants UT-Southwestern's summary judgment motion to this extent.

III

UT-Southwestern moves for summary judgment dismissing Ramirez's Title VII discrimination claim based on his failure in 2002 to receive promotions to the job of Foreman. It contends, *inter alia*, that Ramirez cannot establish a prima facie case because the Foreman positions were never filled.

In the Fifth Circuit, in a case alleging discrimination based on the failure to receive a promotion, "plaintiff's prima facie case consists of proof that (1) plaintiff is a member of a protected class; (2) [he] applied for a promotion to an available position for which [he] was qualified; (3) [he] did not receive the promotion; and (4) the employer filled the position with an employee from outside the protected class or continued to seek applicants for the position."[3] *EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 972 n.3 (5th Cir. 1984); *see Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680-81 (5th Cir. 2001) ("In an age discrimination, failure to promote case, the employee must demonstrate that 1) he belongs to the protected class, 2) he applied to and was qualified for a position for which applicants were being sought, 3) he was rejected, and 4) another applicant not belonging to the protected class was hired.").

Ramirez cannot demonstrate that the Foreman positions that became available in 2002 were filled by a non-Hispanic, or that UT-Southwestern continued to seek applicants for the position, because the summary judgment evidence shows that UT-Southwestern decided not to fill the positions at all. The most Ramirez can establish is that, after two Foreman positions opened in May 2002 and he applied for them, he was later informed that UT-Southwestern had "decided to

---

[3]Ramirez acknowledges that this is the correct formulation. *See* P. Br. at 18. Moreover, this construct of the prima facie case applicable to a promotion claim is widely followed. *See, e.g., Cooper v. S. Co.*, 390 F.3d 695, 724 n.16 (11th Cir. 2004) ("Under *McDonnell Douglas*, a plaintiff may establish a prima facie case of discrimination in promotion by establishing that (1) he belongs to a racial minority; (2) he was qualified for and applied for a position the employer was trying to fill; (3) he was denied the position; and (4) others who were not members of the protected class were hired, or the employer continued to seek applicants with the plaintiff's qualifications."); *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000) ("To carry the initial burden of establishing a prima facie case of race discrimination for a failure to promote claim, the plaintiff must typically show that he or she (1) belongs to a minority group; (2) was qualified for the promotion; (3) was not promoted; and (4) that the position remained open or was filled with a non-minority." (quoting *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995))).

'eliminate the Foreman positions.'" D. App. 299 (Ramirez Aff.). According to Ramirez's evidence, when he asked Johnson (his supervisor) about the jobs, Johnson responded that he "was not supposed to talk about it." *Id.*

Accordingly, because Ramirez has failed to introduce evidence that would permit a reasonable trier of fact to find that UT-Southwestern filled the Foreman positions with employees from outside the protected class or continued to seek applicants for the positions, he cannot establish a prima facie case. The court dismisses his Title VII discrimination claim based on his failure to obtain a promotion to the job of Foreman in 2002.

IV

UT-Southwestern also seeks summary judgment dismissing Ramirez's claim that he was discharged as an act of retaliation, contending that the motive he assigns to UT-Southwestern is immaterial under Title VII.[4] It argues that Ramirez contends he was terminated for requesting pay raises for himself and the other second- and third-shift workers, which is not a protected activity. It also maintains that it has adduced evidence of legitimate, non-retaliatory reasons for discharging him.

UT-Southwestern's first argument misunderstands the gravamen of Ramirez's retaliation claim. Ramirez asserts that he was fired for complaining about retaliation and racial discrimination against minority employees after they sought shift-pay differential. He does not contend that he was

---

[4]UT-Southwestern seeks summary judgment dismissing Ramirez's retaliation claim to the extent based on the failure to promote him. *See* D. Br. at 15-17. It maintains that a failure to promote is not an adverse employment action, and that it has articulated a legitimate, nondiscriminatory reason for failing to promote him in 2002. In his response, Ramirez does not appear to contend that he was denied the promotions in 2002 as acts of retaliation. He focuses instead on his termination. *See* P. Br. at 13, 15. The court therefore concludes that Ramirez does not assert a retaliation claim based on his failure to receive the promotions to Foreman in 2002.

discharged simply for requesting that he and the other workers receive shift-pay differential.[5]

In support of its second argument, UT-Southwestern cites evidence that it terminated Ramirez's employment for engaging in misconduct at work on October 14 and 22, 2002. The court has reviewed the evidence that Ramirez cites in opposition to these reasons, and it concludes that he has presented genuine issues of fact that must be resolved by a trial, i.e., that each of the three grounds on which UT-Southwestern relies is pretextual. *See* P. Br. at 16-18.[6] The court therefore denies summary judgment on this basis.[7]

---

[5]Ramirez contends he was retaliated against for complaining to Vahle that he and the five employees who had requested shift-pay differential were being retaliated against and harassed as minority employees. P. Br. at 14. The evidence he cites to support this assertion is Fact Nos. 20 and 21 that are set out in an earlier part of his brief. *See id.* Fact No. 20 pertains to a complaint made by Andres Rocha and Lewis Wright, two employees who signed the shift-pay differential letter, not to a complaint by Ramirez. *See id.* at 8 & n.25. Fact No. 21 merely refers to Johnson's written reprimand. In a footnote, however, Ramirez includes a citation to the affidavit of Lonnie Thompson ("Thompson"), another maintenance worker who signed the shift-pay differential letter. *See id.* at 8 n.26. Thompson avers that UT-Southwestern retaliated against second- and third-shift workers, including Ramirez, "after we reported racial discrimination[.]" P. App. 140. Although the evidence appears to be somewhat thin that Ramirez (as distinguished from other employees) complained about race discrimination and race-based harassment rather than merely about a lack of shift-pay differential, UT-Southwestern does not seek summary judgment on this basis.

[6]When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact. *See, e.g., Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.).

[7]Although it is not clear from Ramirez's response whether he relies on the following evidence to establish unlawful retaliation and to avoid summary judgment, the court notes that it has not relied on it in denying UT-Southwestern's motion. Ramirez cites evidence that, in response to Johnson's October 31, 2002 letter proposing to discharge him, he alleged that UT-Southwestern was discriminating against him because of his race, national origin, and age. Because Ramirez made this complaint *after* Johnson had already notified him that he was proposing to terminate his employment, it is doubtful that he could prove that he was discharged in retaliation for making the allegations of discrimination in response to the notice of proposed termination.

V

In response to UT-Southwestern's motion, Ramirez asserts that his cross-training-based claim should not be dismissed because UT-Southwestern did not address this cause of action in its motion. In its reply brief, UT-Southwestern argues that it is entitled to summary judgment dismissing the claim on the merits. The court holds that UT-Southwestern is not entitled to this relief.

As the Fifth Circuit has explained, the summary judgment "movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (age discrimination case) (internal quotation marks, brackets, and citations omitted). Because UT-Southwestern did not meet its initial burden, Ramirez had no obligation to demonstrate why summary judgment should not be granted as to his cross-training-based discrimination claim. Accordingly, the court denies this ground of UT-Southwestern's summary judgment motion.

\* \* \*

UT-Southwestern's January 31, 2005 motion for summary judgment is granted in part and denied in part.

**SO ORDERED**.

April 28, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE